UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORY LANE QUICK OIL CHANGE,
INC., a Michigan corporation,

      Plaintiff,

                                                        Case No. 11-11786

v.

MAGID DARWICH, an individual, BELAL          Hon. John Corbett O'Meara
DARWICH, an individual, DARWICH
BROTHERS, L.L.C., a Michigan limited
liability company, and MAZH, L.L.C., a
Michigan limited liability company,

      Defendants.
_____/

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Before the court is Plaintiff's motion for preliminary injunction, filed May 9, 2011. Defendants filed a response on June 6, 2011; Plaintiff submitted a reply brief on June 20, 2011. The court heard oral argument on June 23, 2011, and took the matter under advisement.

**BACKGROUND FACTS**

This action arises out of a dispute between a franchisor, Plaintiff Victory Lane Quick Oil Change, Inc., and franchisee, Defendant Darwich Brothers, LLC. On November 15, 2008, Victory Lane and Darwich Brothers entered into an agreement allowing Darwich Brothers to operate a Victory Lane quick oil change franchise in Saline, Michigan. Defendant Magid Darwich signed the agreement as guarantor for Darwich Brothers.

Victory Lane alleges that Darwich Brothers and Magid Darwich breached the franchise agreement by operating two competing quick oil change centers in Lansing, Michigan. Indeed, "Uncle Sam's Classic Quick Lube #1" and "Uncle Sam's Classic Quick Lube #2" were

registered as assumed names of Darwich Brothers.  Magid Darwich insists that the registrations were done by his bother's accountant without his knowledge.  According to Magid Darwich, his brother, Belal Darwich, opened the Lansing businesses and M. Darwich had no interest in them.  M. Darwich maintains that once he discovered the mistake, Darwich Brothers terminated the "Uncle Sam's" assumed names.  B. Darwich then formed Uncle Sam's Quick Lube – Lansing LLC to operate the Lansing quick oil change locations.

Victory Lane was apparently not satisfied by M. Darwich's explanation and contended that he was in breach of the franchise agreement's non-competition provision.  See Pl.'s Ex. C at 21.2.  Victory Lane also alleges that Darwich Brothers and M. Darwich breached other terms of the franchise agreement, not relevant here.  Victory Lane terminated the franchise agreement on March 7, 2011, and filed a demand for arbitration with respect to Darwich Brothers' alleged violations of the agreement, except for the non-compete provision, on March 8, 2011.

On March 11, 2011, Darwich Brothers sold the assets of the Saline location to B. Darwich.  B. Darwich formed Mazh, LLC, and began operating an oil change business there as Saline Quick Lube.  Darwich Brothers intended to transfer the lease of the location to Mazh, but the landlord refused to sign the transfer.  Therefore, Darwich Brothers is still the tenant of the Saline location.

Defendants contend that upon purchasing the Saline location, B. Darwich and Mazh changed the logo on the building to differentiate Saline Quick Lube from Victory Lane.  Victory Lane argues, however, that the logo mimics and is a "colorable imitation" of Victory Lane's trademarked logo.  Victory Lane contends that Saline Quick Lube's logo and sign infringes upon its mark and violates the Lanham Act.

Victory Lane filed its complaint on April 25, 2011, and an amended complaint on June 4, 2011, against Magid Darwich, Belal Darwich, Darwich Brothers, and Mazh.  The amended complaint contains the following counts: Count I, Lanham Act; Count II, breach of contract; Count III, injunction; Count IV, unjust enrichment; Count V, common law unfair competition; Count VI, conspiracy; Count VII, federal trade dress infringement; and Count VIII, violation of Michigan Uniform Trade Secrets Act.  Victory Lane seeks a preliminary injunction on its Lanham Act and non-compete agreement claims.

## LAW AND ANALYSIS

The factors the court must consider when considering a preliminary injunction are as follows: (1) the likelihood of success on the merits; (2) irreparable harm suffered by the plaintiff in the absence of an injunction; (3) whether the injunction would harm others; and (4) whether the injunction would serve the public interest.  See, e.g., In re DeLorean Motor Co., 755, F.2d 1223, 1228 (6th Cir. 1985).  These are "factors to be balanced, not prerequisites that must be met." Id. at 1229.

    **A.**    **Likelihood of Success on the Merits**

        **1.**    **Non-Compete Claim**

The parties' franchise agreement contains the following non-compete clause:

> 21.3 **Post-Term Covenant Not to Compete.**  The Franchisee, the Owners and the Personal Guarantors will not, for a period of two (2) years after the termination or expiration of this Agreement for an Oil Change or Oil Change/Car Wash Center . . . on their own account or as an employee, principal, agent, independent contractor, consultant, affiliate, licensee, partner, officer, director or Owner of any other person, firm, Entity, partnership or corporation, own, operate, lease, franchise, conduct, engage in, *be connected with, have any interest in or assist any person or Entity engaged in any Competitive Business* which is located within 25

> miles of the Franchised Location, within 10 miles of any other existing or proposed Victory Lane Center, or within any exclusive area granted by Victory Lane or any affiliate of Victory Lane pursuant to a Master Franchise Agreement or other territorial agreement.  The Franchisee, the Owners and the Personal Guarantors expressly agree that the time and geographical limitations set forth in this provision are reasonable and necessary to protect Victory Lane and its other franchisees if this Agreement expires or is terminated by either party for any reason, and that this covenant not to compete is necessary to give Victory Lane the opportunity to resell and/or develop a new Victory Lane Center at or in the area near the Franchised Location.

Pl.'s Ex. C at 21.3 (emphasis added).  Under Michigan law, reasonable agreements limiting competition are enforceable.  See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 546 (6th Cir. 2007) (non-compete enforceable "if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business") (quoting M.C.L. 445.774a(1)).  In evaluating the reasonableness of a non-compete clause, Michigan courts generally examine "the clause's duration, geographic scope, and the type of employment prohibited.  They also consider the reasonableness of the competitive business interests justifying the clause." Id. (citations omitted).

Defendants do not dispute the reasonableness of the non-compete provision.  Rather, the signatories to that provision, Darwich Brothers and M. Darwich, disclaim any interest in the competing business, Saline Quick Lube.  Defendants contend that Saline Quick Lube is owned by B. Darwich and Mazh, who are not parties to the franchise agreement and are not subject to the non-compete.  Defendants' argument glosses over the fact that Darwich Brothers remains the tenant at the Saline Quick Lube location, as the landlord would not agree to transfer the lease to Mazh.  As the tenant, Darwich Brothers is allowing Saline Quick Lube to occupy the same

location as the former Victory Lane franchise.[1]  Accordingly, Darwich Brothers is arguably "connected with," has an "interest in," or is "assist[ing] any person or Entity engaged in any Competitive Business" in violation of section 21.3 of the franchise agreement.  Plaintiff is likely to prevail on the merits of its breach of contract claim.

### 2.    Lanham Act Claim

Plaintiff also contends that Defendants have violated the Lanham Act by using a logo that is a "colorable imitation" of its trademark.  See 15 U.S.C. §§ 1114(1)(a), 1125(a), 1125(c).  Although Defendants changed the name of the Saline location to "Saline Quick Lube," Plaintiff contends that Defendants "continue to utilize a checkered flag scheme surrounding the company name in the same distinctive manner as Victory Lane uses for shops operated by genuine and authorized Victory Lane franchisees." Pl.'s Br. at 15.  Compare Pl.'s Ex. B (Victory Lane mark) with Pl.'s Ex. J (photo of Saline Quick Lube sign).  Plaintiff argues that Defendant's use of the Saline Quick Lube logo will dilute Victory Lane's mark and cause confusion in the marketplace.

"Under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks."  Audi AG v. D'Amato, 469 F.3d 534, 542 (6th Cir. 2006) (citing Two Pesos v. Taco Cabana, 505 U.S. 763, 780 (1992)).  In determining whether there is a likelihood of confusion, the court must consider the following factors:

> (1) the strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines.

---

[1] Apparently, the landlord has started eviction proceedings.

Wynn Oil Co. v. American Way Serv. Corp., 943 F.2d 595, 599-600 (6th Cir. 1991).  These factors serve as a guide, "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." Id. (citation omitted).

Defendants concede that Plaintiff's mark is strong, because it has been registered since 1980. See Wynn Oil, 943 F.2d at 600 (mark registered for five years without being contested is presumptively strong).  Defendants further concede that Victory Lane and Saline Quick Lube are in the same business of providing quick oil change services.

Defendants do dispute that the Saline Quick Lube sign and logo are similar to Victory Lane's mark.  With respect to similarity, the court must determine whether "[t]he appearance of the two marks is similar enough that it would confuse customers 'who do not have both marks before them but who may have a "general, vague, or even hazy, impression or recollection" of the other party's mark.'" Id. (citation omitted).  Moreover, "courts must view marks in their entirety and focus on their overall impressions, not individual features." Daddy's Junky Music Stores v. Big Daddy's Family Music Center, 109 F.3d 275, 283 (6th Cir. 1997).  A review of both logos shows that they both use a black and white checkered flag pattern surrounding the name of each company.  Although the company names are different, the general look and overall impression is similar.  See Victory Lane Quick Oil Change, Inc. v. Hoss, 659 F. Supp.2d 829, 836 (E.D. Mich. 2009) (former franchisee's new logo, changing name but using checkered flag graphic, is substantially similar to Victory Lane's mark).

Nonetheless, Defendants argue that there is no evidence of actual confusion.  Defendants cite to a newspaper article in *The Saline Reporter* stating that Victory Lane became Saline Quick

-6-

Lube and that "customers were noticing a new sign and a different name." The article actually says, however, that "customers to the new Saline Quick Lube *may* notice the business has a new sign and a different name. . . ." Defs.' Ex. W (emphasis added). The article is not evidence that customers were or were not confused. In any event, Plaintiff has not presented evidence of actual confusion. This does not necessarily negate a finding of *likelihood* of confusion, however, if the other elements are met. See Wynn Oil, 943 F.2d at 601 ("[A]ctual confusion is only one of several factors and that 'this factor is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available.").

As to the marketing channels used, Saline Quick Lube is in the same location as the former Victory Lane franchise, which adds to the likelihood of confusion. At least one court has recognized that the "degree of customer care in the oil change business is not high," which also creates a likelihood of confusion. Hoss, 659 F. Supp. 2d at 836; see also Wynn Oil, 943 F.2d at 602 ("In general, the less care that a purchaser is likely to take in comparing products, the greater the likelihood of confusion.").

Although there is no direct evidence of Mazh and B. Darwich's intent in choosing the logo for Saline Quick Lube, they created their substantially similar logo with knowledge of Victory Lane's mark. "[C]ourts have held that use of a mark with knowledge of another's prior use of the mark supports an inference of intentional infringement." Wynn Oil, 943 F.2d at 603.

The final factor is "the likelihood that either business will expand its product line to compete with the other." Id. In this case, the parties are already competitors, although it is not clear if Victory Lane has other locations near the Saline center.

In sum, an analysis of the eight factors weighs in favor of a finding that Saline Quick Lube's use of its logo creates a likelihood of confusion. (The name "Saline Quick Lube" does not.) The court finds that Plaintiff has a strong likelihood of success on the merits of its Lanham Act claim.

### B.     Irreparable Harm

Given the nature of Plaintiff's non-compete and Lanham Act claims, Plaintiff has made a showing that it will suffer irreparable harm if an injunction is not issued. Certified Restoration, 511 F.3d at 550. The loss of fair competition and customer relationships that results from the breach of a non-compete agreement are the kinds of injuries for which monetary damages are difficult to calculate. See id. (finding irreparable harm as a result of breach of franchise agreement's non-compete clause). In a trademark infringement case, a "finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears. . . . the irreparable injury flows both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values. . . ." Wynn Oil, 943 F.2d at 608 (citations and internal quotation marks omitted).

### C.     Harm to Third Parties

The parties have not identified third parties who would be harmed if an injunction is entered. Defendants should not be significantly harmed by having to change their logo for Saline Quick Lube, which has only been in existence for a few months. Defendants argue that Mazh and B. Darwich would be harmed if they are unable to operate Saline Quick Lube. Mazh and B. Darwich *can* operate Saline Quick Lube (as they are not signatories to the non-compete) – however, M. Darwich and Darwich Brothers cannot allow them to use the Saline location

where Darwich Brothers is a tenant. In any event, Defendants have not demonstrated that the harm to Mazh and B. Darwich outweighs the irreparable harm demonstrated by Victory Lane.

### D.     Public Interest

Finally, the public interest would be served by the issuance of an injunction. "Enforcement of contractual duties is in the public interest." Certified Restoration, 511 F.3d at 551. The enforcement of trademark rights and the prevention of consumer confusion are also in the public interest. See Hair Assocs., Inc. v. National Hair Replacement Servs., 987 F. Supp. 569, 591 (W.D. Mich. 1997).

An analysis and balancing of the four preliminary injunction factors weighs in favor of granting Plaintiff's motion.

### ORDER

Therefore, IT IS HEREBY ORDERED that Plaintiff's motion for preliminary injunction is GRANTED. Plaintiff shall submit to the court and Defendants an order for injunctive relief.

                                                  s/John Corbett O'Meara
                                                  United States District Judge

Date: June 29, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, June 29, 2011, using the ECF system.

                                                  s/William Barkholz
                                                  Case Manager